27 F.3d 568
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Emmanuel Ejidfor IGWEBIKE, Defendant-Appellant.
 No. 93-6628.
 United States Court of Appeals, Sixth Circuit.
 June 15, 1994.
 
 Before: GUY and BOGGS, Circuit Judges; and WOODS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Emmanuel Ejidfor Igwebike appeals from the sentence imposed by the district court, claiming that the district court acted beyond its authority in requiring him to surrender his passport as a condition of his supervised release. Since Igwebike failed to object to his sentence in the district court, we affirm the sentence as imposed.
 
 
 2
 * Igwebike, a Nigerian citizen who resided in Baltimore, Maryland,[1] targeted East Tennessee for a series of credit card scams. On July 27, 1988, Igwebike arrived at the Tri-Cities Airport, used a credit card issued to "Ronald Allen" to rent a car, and checked into a motel.
 
 
 3
 Igwebike's one-man crime spree began on July 28. In less than three hours, Igwebike hit six banks in Johnson City and two in near-by Jonesborough. At each bank he produced a credit card and driver's license for "Ronald Allen". He used the card to take out cash advances of $3,000 to $3,400. A teller in one of the banks, however, became suspicious of Igwebike. As Igwebike left the Jonesborough bank, the teller noted the license number on his car. The teller also talked to a Wells Fargo driver who said he had seen Igwebike earlier at a bank in Johnson City. The teller then called the FBI.
 
 
 4
 Meanwhile, Igwebike returned to the airport, dropped his car off, and boarded a flight to Washington D.C. The FBI arrested him as he changed planes in Charlotte, North Carolina. When he was arrested, Igwebike had $27,000 in cash, several counterfeit credit cards, an Oklahoma driver's license issued in the name of Ronald E. Allen, and a Johnson City telephone directory on him.
 
 
 5
 The grand jury returned an eight-count indictment, which charged Igwebike with trafficking or using unauthorized access devices, in violation of 18 U.S.C. Secs. 1029(a)(1) and 1029(c). He pleaded guilty to a one-count information, which charged him with fraud by use of an unauthorized access device, in violation of 18 U.S.C. Secs. 1029(a)(2) and 1029(c). The pre-sentencing report ("PSR") assigned a base offense level of six, added four levels because the loss was more than $20,000, and added two more levels because the offense required more than minimal planning. The PSR then adjusted Igwebike's offense level down by two for his acceptance of responsibility,[2] leaving him with a total offense level of 10. Since Igwebike had a previous conviction for using someone else's social security card to open an account at a Maryland bank, his criminal history category was II. The PSR calculated Igwebike's sentencing range as 8 to 14 months. Igwebike did not object to the PSR's findings.
 
 
 6
 The district court adopted the findings of the PSR and sentenced Igwebike to 14 months' imprisonment and three years' supervised release. The court imposed several standard conditions on Igwebike's supervised release and added a few discretionary conditions. Igwebike appeals the imposition of the condition requiring him to surrender his Nigerian passport.
 
 II
 
 7
 Igwebike has two arguments on appeal. First, he argues that the district court did not have the authority to require him to surrender his passport. Second, he contends that the surrender of his passport was not reasonably related to the terms of his punishment and that it was a greater deprivation of liberty than was reasonably necessary in the circumstances. At his sentencing hearing, however, Igwebike did not object to surrendering his passport.
 
 
 8
 Since Igwebike failed to object to the terms of his supervised release, the sentence may not be set aside unless the district court committed plain error. United States v. Nagi, 947 F.2d 211, 213 (6th Cir.1991), cert. denied, 112 S.Ct. 2309 (1992). A court may order, as a condition of supervised release, any condition that is reasonably related to rehabilitation of the defendant or protection of the public and does not involve a "greater deprivation of liberty than is reasonably necessary" to achieve these goals. 18 U.S.C. Sec. 3583(d). The court may also consider "the nature and circumstances of the offense and history and characteristics of the defendant[.]" USSG Sec. 5D1.3(b)(1). "This Circuit mandates that where a condition of supervised release is reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public, it must be upheld." United States v. Bortels, 962 F.2d 558, 560 (6th Cir.1992).
 
 
 9
 In this case, the court did not commit plain error. The district court found that Igwebike was a flight risk because all of his family resided in Nigeria, he was subject to deportation proceedings, and he had a history of theft by fraud. These findings suggest that the supervised release condition was reasonably related to protecting the public's interest in preventing Igwebike from fleeing the country. Also, although Igwebike's freedom has been restricted by the surrender of his passport, such a condition is not invalid simply because it restricts in some way an important right. See, e.g., United States v. Bolinger, 940 F.2d 478, 480 (9th Cir.1991) (restrictions on the freedom of association not invalid if reasonably related to rehabilitation or protection of the public). Here, Igwebike's loss of liberty is reasonably necessary in the circumstances.
 
 
 10
 For the foregoing reasons, we AFFIRM the district court's sentence.
 
 
 
 *
 The Honorable George E. Woods, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Igwebike may or may not be in the United States legally. He entered the country in 1987 as a non-immigrant student. The INS notified Igwebike in 1988 that he was in violation of his entry status for not attending school and working without permission of the INS. One month later, Igwebike married a United States citizen. In 1990, Igwebike was served with a show cause order, which instituted deportation hearings. A hearing on the validity of his marriage was scheduled for January 1994, but was apparently rescheduled until after this case is resolved. The INS has filed a detainer against Igwebike and he will be transferred to the INS's custody after he serves his prison sentence
 
 
 [2]
 The PSR granted the acceptance of responsibility adjustment because Igwebike freely admitted that he decided to commit the crime after "some people" at a bar in Baltimore told him about the scheme. He said that he drove to Houston, Texas, where he paid $2,500 for five counterfeit cards and a fake driver's license. Igwebike claimed that he committed the crime so he could pay off approximately $6,000 he owed to his alma mater, Morgan State College