UNITED STATES of America,
Plaintiff–Appellee,

v.

Christopher D. KAHN, Defendant–
Appellant.

No. 98–1558.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1998.

Decided April 22, 1999.

Rehearing and Suggestion for Rehearing
En Banc Denied May 28, 1999.

Peggy A. Lautenschlager, Office of the United States Attorney, Larry Wsalek (argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Bruce J. Rosen, Susan C. Blesener (argued), Pellino, Rosen, Mowris & Kirkhuff, Madison, WI, for Defendant–Appellant.

Before: HARLINGTON WOOD, JR., RIPPLE, and ROVNER, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Christopher D. Kahn pleaded guilty to five drug counts. He was sentenced to 151 months of imprisonment and fifteen years of supervised release. Kahn argues that the district court erred in a one level upward departure for multiple vulnerable victims as an additional aggravating factor. In pursuing this appeal, Kahn also filed a motion to strike portions of the government's brief which disclosed excerpts from the Presentence Report ("PSR") which had been sealed by the district court judge. We deny Kahn's motion and affirm the sentencing imposed by the district court.

## I. BACKGROUND

A brief review of Kahn's criminal background is relevant to the district court's sentencing. Kahn's criminal history dates back to 1980 when he was arrested at age 27 for possession of dangerous drugs in the State of Washington. In 1983, he was arrested and charged with two counts of statutory rape and one count of distribution of a controlled substance to a minor. He was convicted and received a five-year suspended sentence for third degree statu-

tory rape, a ten-year suspended sentence for second degree statutory rape, another ten-year suspended sentence for possession of stolen property, and a third ten-year suspended sentence with eight years probation and one year in the county jail for distribution of a controlled substance to a child. Kahn is a registered sex offender in Washington. In 1985, Kahn was arrested and charged with conspiracy to distribute marijuana and received a three-year sentence, of which he served approximately fourteen months.

Kahn moved to Madison, Wisconsin sometime in 1993. On July 22, 1997, Kahn was charged with possession of cocaine with intent to distribute. On December 12, 1997, the government filed a five-count information, charging violations of: (1) 21 U.S.C. § 841(a)(1), possession of cocaine with intent to distribute on or about July 21, 1997; (2) 21 U.S.C. § 856(a)(1), maintaining a place for the purpose of using a controlled substance; (3) 21 U.S.C. § 856(a)(1), maintaining a place for the purpose of distributing a controlled substance; (4) 21 U.S.C. § 859, intentionally distributing marijuana to a person under 21 years of age on or about July 1, 1997; and (5) 31 U.S.C. §§ 5324(a)(3) and 5322, structuring a financial transaction for the purpose of avoiding currency transaction reporting requirements. Kahn waived indictment and on December 16 entered guilty pleas to all counts without benefit of a plea agreement.

The event which led to these charges occurred on July 1, 1997, as reported by a fifteen-year-old minor to the police. The minor stated that she went to Kahn's residence with several of her friends, including an eleven-year-old. She told the police Kahn gave them alcohol and eventually took her upstairs into his bedroom and locked the door. She said Kahn told her to sit on his lap. While sitting on his lap, Kahn began smoking marijuana and insisted she also do so. She stated that when he told her to take off her shirt, she began crying and ran away.

Another of the minors present on July 1 was contacted and interviewed. This fourteen-year-old stated that she attended another gathering at Kahn's condominium on June 26, 1997. She said that she and a group of her friends, males and females ranging from ages fourteen to seventeen, were approached on the beach by Kahn's girlfriend, who then invited them all to Kahn's residence where they could party and have free drinks. She stated that they were all served alcohol and offered marijuana.

Following the United States Sentencing Guidelines ("U.S.S.G.") manual effective as of November 1, 1997, Counts 1 to 4 were grouped pursuant to § 3D1.2(d) because their offense levels are determined largely on the basis of the quantity of the controlled substances involved. During the time Kahn resided in Madison, he obtained a quantity of cocaine and marijuana for his own use and for the use of visitors to his home. As to this quantity, Kahn stipulated for purposes of sentencing that the government could demonstrate by a preponderance of the evidence that he was responsible for at least 2 kilograms but less than 3.5 kilograms of cocaine during the course of his illegal conduct spanning three years. Calculating the base offense level for unlawful manufacturing, importing, exporting, distributing, trafficking or possession of a controlled substance under §§ 2D1.1 or 2D1.8, the court determined that the base offense level for Counts 1 through 5[1] was 28. Both parties agreed.

The court enhanced the base offense level by 2 points as dictated by the vulnerable victim provision found in U.S.S.G. § 3A1.1(b), "If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly suscepti-

---

**1.** Count 5 was disregarded by the court because it was nine or more levels less serious than the group encompassing Counts 1 through 4.

ble to the criminal conduct, increase by 2 levels." Kahn agreed to this enhancement because one of the persons he distributed a controlled substance to was the fifteen-year-old female from the July 1 encounter. This vulnerable victim enhancement directly addressed Count 4, which specifically charged Kahn with intent to distribute a controlled substance to a minor on July 1, 1997. The base offense level was placed at 30.

The court then departed upward one offense level pursuant to § 3A1.1, note 4, "If an enhancement from [§ 3A1.1] subsection (b) applies and the defendant's criminal history includes a prior sentence for an offense that involved the targeting of a vulnerable victim, an upward departure may be warranted." Khan's criminal history included a prior sentence for an offense that involved selecting vulnerable victims. This portion of Kahn's criminal history was based on his 1985 convictions in Snohomish County, Washington, of two counts of statutory rape and one count of distribution of a controlled substance to a minor. Kahn does not dispute this departure on appeal.

The only departure Kahn disputes is a one level enhancement which the court added under § 5K2.0. The court based this departure on evidence concerning a group of ten teenagers, ranging in ages from fourteen to seventeen, who were offered both liquor and marijuana at Kahn's home on June 26, 1997. With this departure, Kahn's base offense level was raised to 32. The court then found that Kahn was entitled to a three level reduction for acceptance of responsibility. The final base offense level was 29.

The court determined that Kahn's criminal history category should be raised from level III to level IV, pursuant to U.S.S.G. § 4A1.3, "If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider im-

posing a sentence departing from the otherwise applicable guideline range." This departure was based upon the unusually lenient sentence Kahn had received in Washington for statutory rape, which was one year imprisonment and eight years probation. Kahn does not dispute this departure.

A base offense level of 29 and a criminal history category IV results in a guideline range of 121–151 months imprisonment. The court sentenced Kahn to 151 months imprisonment.

Kahn argues that the court erred in adding the one additional level under § 5K2.0. He maintains the additional enhancement under § 5K2.0 was legal error because multiple victims had already been taken into account with the two level adjustment for vulnerable victims under § 3A1.1(b). Kahn also filed ,a motion to strike portions of appellee's brief which disclosed excerpts from the PSR, arguing this was in violation of the district court's order that the document be sealed. The government did not seek permission of the district court to disclose portions of the PSR.

We deny Kahn's motion to strike and affirm the district court's sentencing.

## II. ANALYSIS

### A. Sentencing Departure

■ The district court's decision to depart from the Sentencing Guidelines is accorded substantial deference and is reviewed under the abuse of discretion standard. *Koon v. United States,* 518 U.S. 81, 98–99, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Scott,* 145 F.3d 878, 886 (7th Cir.1998). However, a district court abuses its discretion when it makes an error of law. *Koon,* 518 U.S. at 100; *Scott,* 145 F.3d at 886. The Court noted that "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district

court's resolution of the point." *Koon,* 518 U.S. at 100. This circuit has noted that, "[w]e accept the district court's findings of fact supporting the departure unless clearly erroneous." *United States v. Otis,* 107 F.3d 487, 490 (7th Cir.1997) (citation omitted).

■ Section 5K2.0 of the Sentencing Guidelines provides, in part:

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." . . . Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court. Similarly, the court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (*e.g.,* as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

*See also United States v. Lallemand,* 989 F.2d 936, 939 (7th Cir.1993).

■ "A case may be unusual either because it involves a factor not adequately considered by the Guidelines or because a considered factor is present in an exceptional way." *United States v. King,* 150 F.3d 644, 650 (7th Cir.1998) (citing *Koon,* 518 U.S. at 94–96). In adjusting the defendant's base offense level, the district court may take into account "all harm" caused by the defendant. *See* U.S.S.G. § 1B1.3(a)(3). The district court need only link the degree of departure to the structure of the guidelines and justify the

extent of the departure taken. *Scott,* 145 F.3d at 886 (citation omitted).

In Kahn's case, the district court correctly enhanced Kahn's sentence two points for distribution of a controlled substance to a minor on July 1, 1997. The court then added one additional level under § 5K2.0 because of "multiple vulnerable victims of the defendant's distribution of marijuana . . . . relating to the evening of June 26 of 1997, where a 14–year–old female with nine of her friends ranging in ages from 14 to 17 visited the luxurious condominium in which the defendant was holding a party where both liquor and marijuana was [sic] available."

As we noted in *United States v. Haines,* 32 F.3d 290, 293–94 (7th Cir.1994) (internal quotation omitted), "the Guidelines sections are not mutually exclusive . . . even if there is some overlap in the factual basis for two or more sentencing adjustments, so long as there is sufficient factual basis for each they may both be applied." The district court made a determination of credibility as to evidence of Kahn's conduct on June 26, 1997. This conduct was not an element of any of the crimes arising from the July 1, 1997 occurrence for which Kahn was convicted. The court found that harm was caused to a separate set of minors on June 26, 1997 and, therefore, did not err in considering this conduct as an aggravating factor in sentencing Kahn. There was no abuse of discretion when the district court found that Kahn's targeting a separate group of minors on a separate occasion was an exceptional factor and was a sufficiently aggravating factor to allow for enhancement under § 5K2.0. We also find there was sufficient evidence in the record to provide adequate support for the court's decision to depart.

We agree with the district court that the applicable guideline does not adequately take into consideration the additional harm caused by Kahn and affirm the district court's one level departure upward based on § 5K2.0.

## B. Presentence Report

█ The district court placed Kahn's PSR under seal. The district court stated that,

> The Court at this time will place the documents to which it has referred [at the sentencing hearing] in the record under seal with the understanding that in the event of an appeal in this matter, counsel on appeal are provided access to those documents except there will be no reference or examination of any sentencing recommendation which may be a part of these documents. Counsel on appeal or the parties are not provided access to those documents.

Transcript of Sentencing at 4, *United States v. Kahn*, No. 97–CR–0063–S–01 (Western District of Wisconsin Feb. 25, 1998). Kahn seeks to strike portions of the PSR used by the government in their appellate brief because the government did not seek the district court's permission to disclose those excerpts.[2]

In *United States v. Corbitt*, 879 F.2d 224, 236 (7th Cir.1989), we noted that exceptions to nondisclosure of the PSR are the sentencing and appellate courts. However, we held that where materials are submitted under seal, the party seeking disclosure must make "a specific showing of need" to be allowed access to a document. *See id.* at 228. While the finding in *Corbitt* was made with regards to third party access of a PSR, because the district court specifically sealed Kahn's PSR, the government should have requested permission, particularly because the facts concerning June 26, 1997 in the PSR were the basis for the issue on appeal, that of the contested upward departure under U.S.S.G. § 5K2.0.

However, those same facts regarding the activities on the night of June 26, 1997, are detailed in the Complaint For Search Warrant. Two copies of the Complaint For Search Warrant are found in the trial court record, one of which is an attached exhibit to a Motion to Suppress Evidence submitted by the defendant. Because documents in the trial court record are public record, we find that the government's failure to request permission for disclosure of excerpts of the PSR is harmless error.

## III. CONCLUSION

The district court did not err in departing upward one level based on aggravating circumstances outside the elements of the charged criminal activity. Kahn's motion to strike is denied.

---

**2.** Kahn has never contested the accuracy of the facts involved, only the use of the facts in the PSR without having received the district court's permission.