FILED
United States Court of Appeals
Tenth Circuit

April 6, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JEFFREY HARRIS,

Defendant-Appellant.

No. 10-1328
(D.C. No. 1:08-CR-00458-MSK-1)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before **MURPHY**, **HARTZ**, and **GORSUCH**, Circuit Judges.


Jeffrey Harris appeals the district court's prison sentence of 108 months on

his guilty plea to one count of conspiracy to defraud the government.  He

contends that the court's imposition of a variant sentence above the maximum

sentence calculated pursuant to the United States Sentencing Guidelines (U.S.S.G.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

or Guidelines) is procedurally and substantively unreasonable.  We take jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We affirm.

## I.  Introduction

Harris was charged in two cases.  In the first, he was charged in a 23-count indictment with 17 counts of mail fraud and aiding and abetting, in violation of 18 U.S.C. § 1341; one count of conspiracy to defraud the government, in violation of 18 U.S.C. § 286; and five counts of making false claims and aiding and abetting, in violation of 18 U.S.C. § 287.  In the second case, he was charged in a 40-count indictment with 19 counts of mail fraud and aiding and abetting, in violation of § 1341; one count of conspiracy to defraud the government, in violation of § 286, and 20 counts of making false claims and aiding and abetting, in violation of § 287.

On November 30, 2009, Harris conditionally pleaded guilty to one count of conspiracy to defraud the government, in violation of § 286, in exchange for the government's agreement to dismiss the remaining counts in both indictments.  As part of the plea agreement, the parties stipulated to a sentence of 60 months.  The district court deferred accepting the guilty plea until the sentencing hearing. Thereafter, the United States Probation Office prepared a presentence report (PSR), indicating an appropriate sentencing range under the Guidelines of 87 to 108 months.  The government then filed a motion pursuant to section 5K1.1 of the

Guidelines, requesting a 30 percent sentence reduction based on Harris's cooperation in the prosecution of a codefendant.

At the sentencing hearing convened on May 3, 2010, the parties requested a sentence of 61 months, reached by reducing the low end of the Guidelines sentence of 87 months by 30 percent. The district court stated that it would grant the government's § 5K1.1 motion, but would not impose the stipulated sentence. Instead, the court informed Harris that it intended to vary upward from the Guidelines sentence. Harris then accepted the court's offer to withdraw his guilty plea to afford him an opportunity to consult with counsel. Sentencing was rescheduled for July 30, 2010, when Harris reinstated his guilty plea and the court imposed a sentence of 108 months.[1]

## II. Background

Harris stipulated to the following facts. From 2001 through 2006, he ran a scheme to defraud the Internal Revenue Service (IRS) and the Colorado Department of Revenue (CDR), whereby he sought tax refunds for customers of Olympia Financial and Tax Services (Olympia),[2] a corporation he owned and

---

[1]    In addition to a term of imprisonment, the district court imposed a $100 special assessment, restitution of $359,919.91, and three years' supervised release. Because Harris does not challenge these terms on appeal, any challenge to them is waived. *United States v. Wayne*, 591 F.3d 1326, 1334 n.6 (10th Cir. 2010) (holding argument waived for failure to raise it in opening brief).

[2]    Harris initially ran the scheme by using Grand Peak Financial Services, Inc., another corporation he owned and controlled.

controlled. Harris had no specialized tax-preparation experience, nor was he a certified public accountant or a former IRS agent. Olympia's employees and Harris directly solicited customers. They represented that: (1) Olympia could amend the customers' tax returns to claim legitimate tax refunds, (2) the tax professionals who worked at Olympia were former IRS employees or were otherwise qualified to amend tax returns, and (3) Olympia would use legal methods and truthful information to amend customers' returns. Harris also developed and used promotional written and internet materials falsely representing that Olympia employed experienced tax and legal professionals to review the amended returns to ensure compliance with the law. He also represented that all amendments to tax returns would be discussed with the customer and supported with documentation.

To implement the scheme to defraud, Harris and others prepared amended federal and state tax returns containing false information so as to entitle the customer to a refund. Typical of the false claims were itemized deductions, business profits or losses, educational expenses, amount of taxable income, and the amount of refund owed to the taxpayer. Olympia charged its customers 40 to 50 percent of any refund they received. As a result of this scheme, Harris and others caused over 800 fraudulent amended returns to be filed with the IRS claiming $2,667,788 in refunds, R. Vol. 1 at 35, 37. In addition, over 500 fraudulent amended returns were filed with the CDR claiming $511,101 in

refunds. *Id.* The grand total of fraudulent claims submitted to both agencies was $3,178,889. The total loss was determined to be $351,919.91, less than the amount fraudulently claimed, because once fraud was suspected, the agencies stopped issuing refunds, and some of the loss was recouped from the participating taxpayers. *Id.* Vol. 3 at 8-9.

## III. Sentencing[3]

Harris's PSR noted that the base offense level for the crime of conviction was 6 under U.S.S.G. § 2B1.1(a)(2). *Id.* at 9. An increase of 18 levels was warranted because the actual loss and/or the intended loss was more than $2,500,000 and less than $7,000,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(J). *Id.* The offense level was further increased by 2 levels because the offense involved the abuse of trust and/or use of a special skill pursuant to U.S.S.G. § 3B1.3. *Id.* Four more levels were added pursuant to U.S.S.G. § 3B1.1(a) because Harris was an organizer or leader of criminal activity that was otherwise extensive. *Id.* at 10. Lastly, a 3-level reduction was included for acceptance of responsibility under U.S.S.G. § 3E1.1(a) & (b), *id.*, for a total offense level of 27. Harris's 6 criminal

---

[3] 10th Cir. R. 28.2(A)(1) & (2) require that pertinent written and oral findings be included as attachments to the appellant's brief. If the appellant's brief fails to include these attachments, the appellee's brief must include them. 10th Cir. R. 28.2(B). In this case, the district court stated orally its reasons for the sentence and those reasons are included in the sentencing transcript. Although the sentencing transcript was in the record on appeal, the relevant pages were not included as attachments to either party's brief. We remind the parties of their obligations to comply with this court's rules.

history points resulted in a criminal history category of III. *Id.* at 13.

Accordingly, the Guidelines sentencing range was 87 to 108 months. *Id.* at 20.

At the July 30, 2010, sentencing hearing, the district court clearly informed

Harris that it would not accept the parties' stipulated sentence of 61 months.

Before pronouncing sentence, the court told defense counsel that he would have

an opportunity to make legal objections or to continue the hearing to address any

new issues raised by the sentence.

In announcing the sentence, the district court first stated that the sentence

was designed to satisfy the objectives and factors of 18 U.S.C. § 3553(a).[4] The

court then reviewed the applicable Guidelines for (1) the crime of conspiracy to

defraud the government; (2) the stipulated loss amount between $2,500,000 and

$7 million; (3) Harris's role in the offense involving an abuse of trust and use of a

special skill; (4) his role in the offense as an organizer and leader of criminal

activity that was otherwise extensive; (5) his criminal history; and (6) a

downward adjustment for acceptance of responsibility. The court noted the

recommended Guidelines sentence of 87 to 108 months. The court granted the

---

[4] Section 3553(a) directs a court to "impose a sentence sufficient, but not greater than necessary," to serve the following sentencing purposes: (1) to consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) to account for the "seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (3) to adequately deter criminal conduct; (4) "to protect the public from further crimes of the defendant;" and (4) to provide appropriate training, medical care, and other correctional treatment to the defendant.

government's motion for a 30 percent sentence reduction filed pursuant to U.S.S.G. § 5K1.1.

Explaining the decision to impose a variant sentence, the district court determined that the Guidelines calculation did not adequately take into account Harris's criminal history.[5] His first convictions were based on state charges in 1989, at age 29, and involved "communications fraud, computer crimes, unlawful use of financial ATM card, and forgery, all of which are felonies." R. Vol. 2 at 64. Although he was sentenced to concurrent terms of one to fifteen years, he was released on parole after only two years. In 1991, he was convicted in federal court for the felony of conspiracy to transport interstate and sell stolen computer components. His sentence to probation for 60 months was terminated early.

In addition, although under the Guidelines Harris received an enhancement for being a leader, the court was not satisfied that the enhancement adequately considered his manner in dealing with the individuals who worked for him in the scheme. In recalling the testimony of several of Harris's subordinates who had testified before the court, the court noted that they "did not feel free to avoid the

---

[5] A "variant" sentence results when "a court enhances or detracts from the recommended [Guidelines] range through application of § 3553(a) factors." *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007), *overruled in part on other grounds by Irizarry v. United States*, 553 U.S. 708 (2008). In contrast, a "departure" refers to "a sentence above or below the recommended Guidelines range [reached] through application of Chapters Four or Five of the Sentencing Guidelines." *Id.*

unlawful conduct" of the enterprise. *Id.* at 67. This assessment was confirmed by the court's own observations of Harris's "demeanor on the witness stand, his arrogance, [and] his abusive demeanor toward counsel in the courtroom." *Id.* The court also commented on Harris's allocution: he expressed no remorse, he did not take responsibility for his conduct, he said sometimes he obeyed the law and sometimes he did not, and he spoke of his plans to turn his incarceration to his advantage by attending college on-line. The court found those remarks to be focused on what would benefit him.

After remarking that Harris had been convicted and sentenced for crimes involving fraud resulting in significant losses while in his 30's, the district court observed that Harris, now at a more advanced age, had not changed his behavior or accepted responsibility for his criminal conduct, thus posing a risk to society. Expressing concerns about "(1) the seriousness of the offense; (2) the necessity to promote respect for the law; (3) [and] the necessity to protect the public from further crimes by Mr. Harris," the court imposed a sentence of 108 months' incarceration. *Id.* at 68-69. Even though the sentence was within the Guidelines range, the court acknowledged it was a variant sentence because it was the government's § 5K1.1 motion that brought the sentence to 108 months; without the motion, the sentence would have been above the Guidelines range. After announcing the sentence and the reasons for it, the court inquired whether any of the parties requested further clarification or explanation. All parties declined.

-8-

**IV. Discussion**

*A. Standard of Review*

"In reviewing a sentence on appeal, this court must first determine whether the sentence is procedurally reasonable, . . . review[ing] the district court's legal conclusions regarding the Guidelines *de novo* and its factual findings for clear error." *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008). "Procedural reasonableness addresses whether the district court incorrectly calculated or failed to calculate the Guidelines sentence, treated the Guidelines as mandatory, failed to consider the § 3553(a) factors, relied on clearly erroneous facts, or failed to adequately explain the sentence." *Id.*

Substantive reasonableness addresses "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in . . . §3553(a)." *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008) (internal quotation marks omitted). This court reviews "all sentences–whether inside, just outside, or significantly outside the Guidelines range–under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007); *accord United States v. Smart*, 518 F.3d 800, 806 (10th Cir. 2008). Under this standard, "[w]e afford substantial deference to the district court," *United States v. Martinez*, 610 F.3d 1216, 1227 (10th Cir.) (citation omitted) (internal quotation marks omitted), *cert. denied*, 131 S. Ct. 543 (2010), and find an abuse of discretion only if the sentence imposed is "arbitrary

capricious, whimsical, or manifestly unreasonable," *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008) (internal quotation marks omitted). "[W]e will defer to the district court's judgment so long as it falls within the realm of the[] rationally available choices." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007).

*B. Procedural Reasonableness*

Harris first claims the sentence is procedurally unreasonable because the district court considered factors already taken into account in calculating the Guidelines sentencing range without explaining with sufficient specificity how Harris's situation differed from the typical Guidelines situation. He also argues that the court's stated reasons were not sufficiently compelling to justify the sentence, which he characterizes as "more than 40 percent longer than the 61 month sentence contemplated under the Guidelines." Aplt. Br. at 17.

Harris has forfeited his first argument challenging the adequacy of the district court's explanation by declining the court's invitation to provide further clarification or explanation at the conclusion of the sentencing hearing. *United States v. Uscanga-Mora*, 562 F.3d 1289, 1294-95 (10th Cir.), *cert. denied*, 130 S. Ct. 289 (2009). Consequently, we review this issue for plain error. *Id.* at 1293. "Our plain error standard is satisfied when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the

fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1295 (internal quotation marks omitted).

Harris has not demonstrated that the district court's explanation, even if inadequate, affected his substantial rights. The district court's sentencing decision was fully supported by evidence in the PSR that Harris stipulated was accurate. *See United States v. Mateo*, 471 F.3d 1162, 1166 (10th Cir. 2006) (holding sentencing court "is entitled to rely on uncontested facts contained in the PSR for certain sentencing purposes"). The court gave clear and specific reasons for its decision to impose an upward variant sentence, concluding that application of the Guidelines would not result in a sentence to achieve the purposes of § 3553(a), because they did not take into full consideration Harris's criminal history, his treatment of his subordinates, his arrogance and abusive demeanor, his lack of remorse and failure to acknowledge responsibility, the seriousness of the offense, the need to promote respect for the law, and the need to protect the public. Accordingly, Harris has not established that any error affected his substantial rights, "meaning that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Weiss*, 630 F.3d 1263, 1274 (10th Cir. 2010) (internal quotation marks omitted).

Turning to Harris's second argument that the district court's justification was not sufficiently compelling, we reject as a matter of law his contention that

-11-

extraordinary circumstances or conditions must be found before a district court may impose an above-Guidelines sentence.  To the contrary, the district court was "allowed to contextually evaluate each § 3553(a) factor, including those factors the relevant guideline(s) already purport to take into account, even if the facts of the case are less than extraordinary." *Smart*, 518 F.3d at 808.  In addition, Harris's argument that his sentence is procedurally unreasonable because it represents an increase of 40 percent above the *minimum* Guidelines sentence is unavailing.  Not only does he offer no authority for measuring from the lowest point on the Guidelines range, but using "a rigid mathematical formula" to evaluate reasonableness has been rejected, *see Gall*, 552 U.S. at 47.  Accordingly, we conclude that the sentence is procedurally reasonable.

## C.  Substantive Reasonableness

Harris also challenges the substantive reasonableness of his 108-month sentence, arguing that the above-Guidelines sentence created unwarranted sentencing disparities among similarly situated defendants.  He claims that the characteristics of his offense are addressed by the Guidelines, thus creating a sentencing disparity.  He maintains that the district court failed to identify sufficient meaningful distinctions between him and others who committed similar offenses to warrant the variant sentence.

"Unlike procedural reasonableness review, which focuses on the permissibility of relying on a particular factor, substantive reasonableness review

-12-

broadly looks to whether the district court abused its discretion in weighing permissible § 3553(a) factors in light of the 'totality of the circumstances.'" *United States v. Sayad*, 589 F.3d 1110, 1118 (10th Cir. 2009) (quoting *Gall*, 552 U.S. at 51). "Because substantive reasonableness contemplates a range, not a point, in this arena we recognize a range of rationally available choices that the facts and law at issue can fairly support." *Martinez*, 610 F.3d at 1227 (citations omitted) (internal quotation marks omitted).

The district court was required to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6), but "this factor requires a district court to take into account only disparities *nationwide* among defendants with similar records and Guideline calculations," *Martinez*, 610 F.3d at 1228 (internal quotation marks omitted). The district court was not required to distinguish Harris's "characteristics and history from those of the ordinary offender contemplated by the Guidelines." *Smart*, 518 F.3d at 808 (internal quotation marks and ellipsis omitted). Moreover, "[s]ince the District Judge correctly calculated and carefully reviewed the Guidelines range, [she] necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." *Gall*, 552 U.S. at 54. Accordingly, based on the court's consideration of the appropriate factors, we reject Harris's claim that his sentence is substantively unreasonable based on alleged sentencing disparities.

-13-

We next consider whether Harris's sentence is within the range of rationally available choices fairly supported by the facts and law. As discussed above, the district court determined that a Guidelines sentence would produce a sentence less than necessary to achieve the purposes of § 3553(a) because the Guidelines failed to take into full consideration Harris's criminal history, his treatment of his subordinates in the fraudulent scheme, his arrogance and abusive demeanor, or his lack of remorse and failure to acknowledge responsibility. *See* § 3553(a)(1) & (2)(A). The court further found that an upward-variant sentence was warranted based on the seriousness of the offense, the need to promote respect for the law, and the need to protect the public. *See id.* § 3553(a)(2)(A) & (C). As a result, the court determined that a 108-month sentence would best achieve the purposes of § 3553(a). "In examining a deviation from the advisory Guidelines, this court may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Sayad*, 589 F.3d at 1116 (internal quotation omitted); *see also Smart*, 518 F.3d at 808 (stating deferential standard of review precludes our examination of the weight the district court gave the § 3553(a) factors or its balancing of those factors).

Applying our deferential standard of review, and "tak[ing] into account the totality of the circumstances, including the extent of [the] variance from the

Guidelines range," *Gall*, 552 U.S. at 51, we determine that the above-Guidelines sentence of 108 months is substantively reasonable.

## V. Conclusion

The district court's sentence in this case was both procedurally and substantively reasonable. Accordingly, this court **AFFIRMS** the 108-month sentence imposed on Jeffrey Harris.

Entered for the Court

Michael R. Murphy
Circuit Judge